**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2821
_____

PIM BRANDS INC.,
                              Appellant

v.

HARIBO OF AMERICA INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:19-cv-14183)
District Judge: Honorable Madeline C. Arleo
_____

Argued: June 20, 2023

Before: CHAGARES, *Chief Judge*, and BIBAS and MATEY,
*Circuit Judges*

(Filed: September 7, 2023)

Jonathan Z. King    **[ARGUED]**
Richard S. Mandel
COWAN, LIEBOWITZ & LATMAN, P.C.
114 W. 47th St., 21st Floor
New York, NY 10036

Leah Kelman
David R. King
HERRICK, FEINSTEIN LLP
One Gateway Center, 9th Floor
Newark, NJ 07102
   *Counsel for Appellant*

Michael Cukor       **[ARGUED]**
MCGEARY CUKOR LLC
150 Morristown Rd., Suite 205
Bernardsville, NJ 07924

Mark J. Liss
Tamara A. Miller
Laura M. Schaefer
LEYDIG, VOIT & MAYER, LTD.
180 N. Stetson Ave., Suite 4900
Chicago, IL 60601
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

    Hot summer days call for a slice of watermelon: a juicy, red wedge with a green-and-white rind. Some candy companies evoke this image by using colors alone, making their candies red, white, and green. But the watermelon effect is significantly stronger if the red-white-and-green candy is shaped like a wedge. Because the tricolored shape is recognizable as

watermelon flavored, the whole appearance is useful. So a candy-maker cannot block competitors from using the combined shape and colors by trademarking that combination. We will thus affirm the District Court's grant of summary judgment.

### I. COMPETING CANDIES: WATERMELON WEDGES

PIM makes candies. Two decades ago, it rolled out a new chewy candy: Sour Jacks Wedges. The original version is watermelon flavored. Its colors match its flavor: a green layer topped by a thin white band and then a larger red section. And the candy is shaped like a wedge. PIM advertised the candy as "The Ultimate Shape of Sour" and told consumers to "Respect the Wedge" and to keep "Livin' on the Wedge." Compl. ¶¶ 15–18.

Once the new candy had been on the market for more than a decade, PIM tried to trademark just "the shape of a wedge for candy." JA 194. The Patent and Trademark Office rejected it, requiring the company to add colors. PIM obliged, registering a trademark in "the shape of a wedge for candy, with an upper green section with white speckles, followed by a narrow middle white section and followed by a lower red section with white speckles." Registration No. 5,029,701. Its trademark looks like this:



JA 137. It is this trademark—the watermelon-colored wedge—that is at issue.

PIM later started making Sour Jacks Wedges in other flavors. Each has a color to match its fruity flavor, like green for green apple or yellow for lemonade. But all are in the same wedge shape. The Patent Office later granted PIM a supplemental registration for a tricolored wedge with unspecified colors. That trademark is not before us today.

Haribo also makes candies. It recently introduced its own chewy watermelon candy. Its version is an elongated watermelon wedge. Like PIM's, Haribo's candy is red, white, and green. Haribo says it designed the candy's shape and colors to match its flavor: watermelon.

PIM thinks Haribo's design copies its own. So it sued for trademark and trade-dress infringement under the Lanham Act and for unfair competition under New Jersey common law. 15 U.S.C. §§ 1114(1), 1125(a)(1)(A). Haribo countered that PIM's trade dress was functional (and unprotectable for other reasons not before us on appeal), so it asked the court to cancel PIM's trademark. But because PIM's mark is registered, it is presumptively valid. § 1057(b). So Haribo bore the burden of proving that it is functional. § 1115(a), (b)(8).

The District Court held that Haribo had borne that burden and granted it summary judgment on functionality. Because PIM's combination of colors and shape helps identify the candy's watermelon flavor, the court reasoned, it is functional and so not protectable as trade dress.

PIM now appeals. It criticizes the District Court for not focusing on the wedge shape in isolation from the colors. It admits that the candy's color is functional because it identifies the flavor. But it argues that the wedge shape separately identifies the brand.

The District Court had jurisdiction under 15 U.S.C. §§ 1119, 1121(a), and 28 U.S.C. §§ 1331, 1338, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255 (3d Cir. 2021). We ask whether any material fact is genuinely disputed and whether, viewing the facts most favorably to PIM, Haribo merits judgment as a matter of law. *Id.* A dispute is "'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Functionality turns on a finding of fact. *Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3d Cir. 1984). So summary judgment is proper only if, given the correct legal standard, no reasonable jury could find the trade dress nonfunctional.

Functionality is materially the same under federal and state law. *Ezaki Glico*, 986 F.3d at 255. So we, like the parties, focus on federal trademark law.

We consider the trade dress as it is presented to us. *See* J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 7:76 (5th ed. 2023) ("[I]t is largely up to the plaintiff to define what aspect is claimed as protectable trade dress."). PIM limited its claims to the trade dress described in

5

its primary federal trademark registration: a wedge shape in watermelon colors.

## II. PIM'S WEDGE SHAPE, TOGETHER WITH ITS COLORS, USEFULLY SIGNALS THE CANDY'S WATERMELON FLAVOR

### A. Trademark law does not protect useful designs

1. *A design is functional if it is useful for anything beyond branding*. Trademarks protect buyers and sellers by flagging the goods' source. Trade dress, a subset of trademark, protects distinctive choices (like size, shape, and color) that make up "the overall look of a product." *Ezaki Glico*, 986 F.3d at 255 (internal quotation marks omitted). Unlike utility patents, which protect useful designs, trademarks protect features that are arbitrary, ornamental, or the like. *Id.* at 255–56. *Compare* 35 U.S.C. § 101, *with* 15 U.S.C. § 1127. So a trademark can be cancelled if it "comprises any matter that, as a whole, is functional." 15 U.S.C. § 1052(e)(5); *see also* § 1064(3). To be functional, the trade dress as a whole "need only be useful, not essential." *Ezaki Glico*, 986 F.3d at 258. If it is functional, competitors may copy it freely.

Functionality is not a high bar. Trade dress is limited to design choices that serve only to brand a product. If a design choice "would put competitors at a significant non-reputation-related disadvantage," then it is functional. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995). Even if the design chosen both promotes a brand and also "makes a product work better," it is functional and unprotectable. *Ezaki Glico*, 986 F.3d at 258. "So long as the design improves cost, quality, or the like, it cannot be protected as trade dress." *Id.*

2. *If design choices serve the same function, we consider them together*. PIM asks us to look at the wedge shape in isolation. It suggests that under *Ezaki Glico*, we must analyze each feature of the trade dress independently to figure out whether each is "[it]sel[f] nonfunctional or help[s] make the overall design distinctive." Appellant's Br. 26. But that claim overreads *Ezaki Glico*.

That case dealt with a different kind of confectionery controversy. Ezaki Glico shaped its cookies into sticks and coated them partly with chocolate. It claimed that combined design as a trade dress. But the stick shape let it fit more cookies into each package. And dipping only part of the stick in chocolate helped people eat it without getting chocolate on their hands. 986 F.3d at 259. Ezaki Glico claimed as much in its ads. *Id.* at 260. Because each element of the claimed trade dress served a function (or in that case, two separate functions), the whole trade dress was functional. *Id.* at 257–59.

Sometimes, as in *Ezaki Glico*, design choices for features serve discrete functions. But here, we have two features (shape and color) whose designs serve a single function—identifying the flavor. So this case answers a follow-up question: When a trade dress has an identifiable function, do we need to analyze each feature separately to see if it independently contributes to that function? No.

Rather than divide and conquer, when features' designs together serve a function, we look at those designs together. As we noted in *Ezaki Glico* itself, we analyze functionality "at the level of the particular design chosen for feature(s)." *Id.* at 257. When a product's overall look serves some function, we ask

7

whether that function is served by the whole or by some discrete part of the trade dress. The trademark statute also supports this idea, stating that trademark protection is not available for a mark "that, *as a whole*, is functional." 15 U.S.C. § 1052(e)(5) (emphasis added). So if the whole trade dress serves a single function, and each feature's design contributes to that same function, then the whole trade dress is functional.

As the parties agreed at oral argument, if a product's picture is enough evidence of its usefulness, the judge's common-sense assessment of functionality may suffice. They are right. Because the functionality bar is low, all the design need do is give the product a significant competitive edge beyond identifying its source. *See Qualitex*, 514 U.S. at 164, 169. And not all consumers have to see the trade dress as serving a function beyond identifying the product's source. It is enough that all reasonable jurors would conclude that a significant number of consumers would see it that way. That is true here.

### B. The watermelon-colored wedge shape serves a function: identifying its flavor

The parties agree that the candy's color scheme is functional because it helps to identify its watermelon flavor. We agree. Communicating the candy's flavor is a legally recognizable function. And the candy's colors serve that function: they are oriented like the fruit's colors and evoke the fruit.

8

The question is whether the candy's colors alone signal its flavor or whether the colors and shape combined further that function. Though PIM disagrees, we think the two work together. On this issue, the parties' photos are worth a thousand words of briefing. Here is PIM's candy side by side with real watermelon slices:



Any reasonable juror would agree: The whole trade dress, not just the colors, makes this candy resemble a watermelon slice. The candy and the fruit share similar shapes and colors. Even the orientations match: each has a long, wide, green base; a thin, white layer running the length and width of the green base; and a triangular, reddish-pink top covering that white layer and angling up to a point.

PIM objects that the District Court focused on the candy's colors at the expense of its shape. Not so. The court rightly analyzed the trade dress as a whole and whether any part of it only advanced the brand. It even included a footnote about the shape itself. The court was right not to divorce shape from color. The two work together to resemble watermelon. PIM may have worked to build a brand around the shape. But the

wedge comes to us dressed in red, white, and green, and that wedge looks like a watermelon.

As PIM notes, the shape and colors do not match exactly: The bottom could be more curved and have a thinner band of darker green. The wedge could be wider. The point could be sharper and a deeper red. There could be black seeds. But as PIM itself put it, because this candy is an impulse buy, it "do[es]n't need to be the Mona Lisa." Oral Arg. 13:15–19. To identify its flavor, the candy's trade dress need not exactly copy watermelon, but just evoke it.

And the shape contributes to the overall effect. Some shapes for watermelon candies, such as sharks, ropes, and ribbons, detract from (or at least add no information beyond) the colors. But the wedge shape contributes to the function. The colors alone could leave some ambiguity: Is it watermelon or strawberry? With the wedge shape, all ambiguity is gone—this candy is a wedge of watermelon.

In that vein, the wedge might or might not identify the flavor on its own or with other color schemes. That trade dress is not before us; the watermelon-colored wedge is. The registered trademark at issue defines the mark by both colors and shape. So does PIM's complaint. Plus, when we look at the pictured candies, our eyes are drawn immediately to both their colors and their shape. We think of a slice of watermelon based on both its color scheme and its shape. And in this color scheme, the candy looks like a watermelon wedge. So we hold that the trade dress presented as a whole, colors and shape together, makes the watermelon candy more identifiable as a slice of watermelon. That is function enough.

\* \* \* \* \*

PIM may have created the wedge shape to distinguish its product from the rest of the market. But in doing so, it made a candy reminiscent of a juicy watermelon wedge. That resemblance makes the whole trade dress of the red-white-and-green wedge functional when applied to a watermelon candy. So PIM cannot use its trademark to shut down Haribo's competing candy. We will affirm the judgment of the District Court with further instructions to limit the cancellation order to the primary registration, leaving the supplemental registration intact for another day.